ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DANIEL CURREAN DOWNING, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) | CV 106-001 |
| KEVIN ROBERTS, | ) ) ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Daniel Currean Downing filed the above-captioned case pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

In March 1996, Petitioner was convicted, in the Richmond County Superior Court, of burglary, kidnaping, three counts of aggravated assault, and possession of a firearm during the commission of a crime. (Doc. no. 9, Ex. 6, p. 110). The trial court subsequently sentenced Petitioner to fifty-five (55) years of imprisonment. (Id. at 113). Petitioner timely filed a motion for a new trial, which the trial court denied. (Id. at 114, 118).

Thereafter, Petitioner appealed his convictions and sentences to the Georgia Court of Appeals. (Id. at 48). Petitioner alleged that the trial court erred when it permitted the

State to introduce bad character evidence of gang activity by Petitioner and his co-defendant, Mark Lorenzo Squires. (Id. at Ex. 7, p. 475). The Georgia Court of Appeals held that, because much of Petitioner's criminal liability for the indicted offenses was derivative, the State was entitled to show that the defendants were closely associated through gang activity to provide a motive for Petitioner's support in committing the charged offenses. Downing v. State, 255 Ga. App. 225, 227, 564 S.E.2d 828, 830 (2002). Furthermore, the court held that even if admission of the "gang evidence" was an error, the victims testified about Petitioner's actions during the ordeal, resulting in evidence of guilt which was so overwhelming that any error would have been harmless. Id.

Petitioner did not seek further direct review in the Georgia Supreme Court. However, in January 2003, Petitioner filed an "extraordinary motion for a new trial," wherein he argued that during his trial his co-defendant was at-large and, as such, Petitioner was not able to obtain a statement from his co-defendant to use at trial. (Doc. no. 9, Ex. 9, p. 2). He claimed that his co-defendant had since given Petitioner a statement of guilt and was willing to testify as to his guilt at a new trial for Petitioner. (Id. at 3). The Richmond County Superior Court denied Petitioner's motion in September 2003. (Id. at Ex. 10).

In July 2003, Petitioner filed a state habeas corpus petition. (Id. at Ex. 1). Petitioner alleged that: (1) appellate counsel, Michael C. Garrett, rendered ineffective assistance of counsel because he failed to raise a claim concerning the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion; (2) appellate counsel rendered ineffective assistance because he failed to raise claims of ineffective assistance of trial counsel, Charles C. Mayers, based upon trial counsel's (a) failure to request a jury

charge on the burden of proof for the affirmative defense of coercion, and (b) failure to request a jury charge of a correct statement of law adjusted to the evidence on the burden of proof for the affirmative defense of coercion. (Id.). The state habeas court denied Petitioner's request for relief on January 16, 2005. (Id. at Ex. 4, p. 9).

Thereafter, Petitioner filed an application for a certificate of probable cause to appeal with the Georgia Supreme Court, which was denied in December 2005. (Id. at Ex. 5). Having exhausted state court remedies, Petitioner filed the instant § 2254 petition in this Court. (Doc. no. 1). Petitioner argues that: (1) appellate counsel rendered ineffective assistance of counsel because he failed to raise a claim concerning the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion; (2) appellate counsel rendered ineffective assistance because he failed to raise claims of ineffective assistance of trial counsel based upon trial counsel's (a) failure to request a jury charge on the burden of proof for the affirmative defense of coercion, and (b) failure to request a jury charge of a correct statement of law adjusted to the evidence on the burden of proof for the affirmative defense of coercion; and (3) the trial court erred when it permitted the State to introduce bad character evidence of gang activity by Petitioner and his co-defendant. (Doc. no. 1).

Respondent filed a motion to dismiss the instant petition as untimely. (Doc. no. 11). On December 21, 2006, the Honorable Dudley H. Bowen, Jr., United States District Judge, denied Respondent's motion to dismiss. (Doc. no. 16). Subsequently, Respondent filed a brief in support of his answer, opposing Petitioner's claims on the merits. (Doc. nos. 9, 17). The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in Williams v. Taylor, 529 U.S. 362, 404 (2000). The Court explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) *"contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) *"involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

Id. at 404-05 (emphasis added).

The Eleventh Circuit has explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.

4

> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (internal citations omitted). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, § 2254(e)(1) sets a highly deferential standard of review for state court factual determinations. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001) (citations omitted); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000).

With these basic principles in mind, the Court now turns its attention to the instant petition.

5

## III. DISCUSSION

A.  **Ineffective Assistance of Appellate Counsel**

As noted above, Petitioner argues that Mr. Garrett was ineffective for failing to raise appellate claims based on whether the jury was properly charged on the issue of coercion. The state habeas court conducted an evidentiary hearing on May 24, 2004, at which Petitioner and Mr. Garrett testified.[1] (Id. at Ex. 4). The state habeas court found that:

> Mr. Garrett has been a member of the Georgia bar since 1973, and his practice has focused exclusively on criminal defense for the past 25 years. (HT 13). At the time he represented Petitioner, Mr. Garrett devoted approximately 100 percent of his practice to criminal defense. (HT 13). At the time he represented Petitioner, Mr. Garrett had conducted hundreds of criminal felony trials. (HT 13).
>
> Mr. Garrett was retained to represent Petitioner and entered Petitioner's case following trial but prior to the motion for new trial. (HT 14-15). To prepare for the motion for new trial and for direct appeal, Mr. Garrett spoke with Petitioner, with Petitioner's trial counsel, reviewed the trial court record and the trial transcript, and conducted legal research. (HT 15, 16).
>
> Mr. Garrett considered raising ineffective assistance of trial counsel as a potential ground, but found no issues that had merit related to ineffective assistance. (HT 16-17, 20). The fact that Mr. Garrett knew Petitioner's trial counsel did not affect his decision not to raise an ineffective assistance of counsel claim against him. (HT 20).
>
> Regarding the failure to raise a claim concerning the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion, Mr. Garrett noted that the trial court gave every instruction Petitioner requested, that the trial court instructed the jury on the State's burden of proof, and that there was no indication that Petitioner's defense at trial was coercion. (HT 22, 24, 106, 378-379). Mr. Garrett also noted that

---

[1] As explained *supra*, in accordance with 28 U.S.C. § 2254(e)(1), the factual findings of the state courts are deemed correct since Petitioner has not presented clear and convincing evidence to the contrary.

6

> Petitioner did not testify at trial to support an alleged defense of coercion. (HT 22, 352, 360-361). Ultimately, Mr. Garrett raised the issue which, in his professional opinion, had the greatest legal merit and opportunity for success. (HT 17).

(Doc. no. 9, Ex. 4, pp. 3-5).

Relying on Mr. Garrett's testimony and the trial record, the state habeas court concluded that Mr. Garrett had acted reasonably in declining to raise a claim concerning the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion on appeal. Specifically, applying Strickland v. Washington, 466 U.S. 688, 689 (1984), and Smith v. Robbins, 528 U.S. 259, 285 (2000), the court determined that appellate counsel rendered competent, effective assistance and made reasonable strategic decisions in choosing which arguments would be more likely to be successful on appeal. (Doc. no. 9, Ex. 4, pp. 5-8). Furthermore, the court concluded that Petitioner did not demonstrate a reasonable probability that his appeal would have been successful but-for counsel's alleged errors. (Id. at 8).

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington.[2] To make out a claim of ineffective assistance of appellate counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his appellate counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id. at 694.

---

[2]The Strickland test applies to claims of ineffective assistance of both trial and appellate counsel. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

7

The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate, 261 F.3d at 1217 (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as [appellate] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack

of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Furthermore, in the appellate context, the Court recognizes that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). It is up to appellate counsel to winnow out weaker arguments and select the most promising issues for review. Id. at 751-52. Indeed, the appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." Evitts v. Lucey, 469 U.S. 387, 394 (1985).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's conviction. The facts underlying Petitioner's convictions are set forth in the Georgia Court of Appeals decision

9

and, pursuant to § 2254(e)(1), are presumed to be correct. Viewing the facts in a light most favorable to the verdict, the Georgia Court of Appeals determined that:

> [E]arly one morning, Mark Lorenzo Squires sought Downing's help because Squires suspected that his girlfriend was dating someone else. Agitated and angry, Squires asked Downing if he had a pistol. Downing provided him with a .380 caliber Sig Sauer semi-automatic. Riding together in Squires's car, the two men proceeded to the girlfriend's house. As they neared her residence, they spotted a car parked in front of the house, so Squires drove to the end of the street where they could monitor the house. Minutes later, the girlfriend, her 12-year-old brother, and another man exited the house and began walking toward the parked car. Downing and Squires confronted them, and, at gunpoint, Squires ordered Charles Fubler out of the car. Fubler complied but managed to run to the front door and lock himself inside. When Squires could not open the front door, he fired into the door and then proceeded to kick open a side door. While Squires chased down Fubler, Downing grabbed the girlfriend and her brother. Downing forced both of them to the side door, where the brother entered first. By that time, Squires had already gunned down Fubler, shooting him in the head and chest. When the younger brother entered the kitchen, Squires shot him in the upper chest. As the girlfriend struggled desperately with Downing, trying to remove his hands from her neck, Downing overpowered her and forced her inside, where Squires shot her. A lone bullet pierced Downing's arm while he was restraining her, entering the victim's spine. After the shootings, Downing and Squires fled immediately with Downing driving Squires's car back to his trailer. To enable Squires to elude capture by going to Atlanta, Downing provided him with $200. Later that same day, Downing obtained medical treatment for the gunshot wound to his left wrist.
>
> . . . .
>
> After waiving his rights, Downing provided police with his version of events. In a tape-recorded statement, Downing claimed that he had struggled with the girlfriend and her brother in order to keep them out of harm's way because "I know my partner's mad" and due to his concern that Squires would shoot her too. By Downing's account, he was just trying to calm her down. An investigator who took a Polaroid of Downing prior to interviewing him testified that Downing flashed a gang-related hand sign while being photographed. At the time of the trial, Squires remained at large and was thought to be hiding in California where the Federal Bureau of Investigation was trying to locate him.

10

Downing, 255 Ga. App. at 225-27, 564 S.E.2d at 829-30.

1.      **Improper Jury Charge**

Petitioner claims that Mr. Garrett rendered ineffective assistance of counsel because he failed to raise a claim concerning the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion.[3] As noted *supra*, Mr. Garrett explained during the state habeas court's evidentiary hearing that he did not raise a claim relating to the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion because: (1) the trial court gave every instruction which was requested by Petitioner, (2) the trial court instructed the jury on the State's ultimate burden of proof, and (3) upon review of the trial record, there was no indication that Petitioner's defense at trial was coercion, and Petitioner did not testify at trial to support an alleged defense of coercion. (Doc. no. 9, Ex. 4, p. 4). Mr. Garrett raised a claim relating to the admission of bad character evidence of gang activity, an issue that, in his professional opinion, had the greatest legal merit and opportunity for success. (Id.).

Petitioner offers nothing to suggest that Mr. Garrett acted unreasonably by not raising an argument regarding the trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion, other than to state that no reasonably effective appellate counsel would have failed to address this obvious and significant issue. (Doc. no. 20, p. 6). However, as the state habeas court noted, Mr. Garrett reviewed the trial transcript multiple

---

[3] "A person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." O.C.G.A. § 16-3-26.

11

times, spoke with trial counsel, and spoke with Petitioner before determining the issues which he regarded as the most persuasive on appeal. (Doc. no. 9, Ex. 4, p. 7). After concluding his research, Mr. Garrett saw no evidence relating to coercion and, therefore, did not raise a claim relating to this issue.

In support of his argument that evidence in the record supports the affirmative defense of coercion, Petitioner points to (1) the girlfriend's testimony that Petitioner initially restrained her and kept her from entering the residence, and (2) his taped confession to law enforcement, introduced at trial through the testimony of Investigator J.M. Cawley of the Richmond County Sheriff's Department, in which he asserted that he had struggled with the girlfriend and her brother to keep them out of harm's way. (Doc. no. 20, p. 3 (citing doc. no. 9, Exs. 6, 7, pp. 223-24, 337)). However, as the Georgia Court of Appeals noted, the evidence of Petitioner's guilt was overwhelming:

> Downing admitted providing Squires with the sole firearm used in the shootings. Downing willingly accompanied Squires to the crime scene and referred to him as "my partner." Once there, Downing physically restrained the girlfriend and her brother, foreclosing their escape and enabling Squires to shoot them. The girlfriend and her brother both identified Downing and testified about Downing's actions during their ordeal.

Downing, 255 Ga. App. at 227, 564 S.E.2d at 830.

Despite Petitioner's assertions to the contrary, nothing in the record supports his alleged affirmative defense of coercion or undermines the factual findings of the Georgia Court of Appeals or the state habeas court, much less yields a conclusion that, had Mr. Garrett raised an issue regarding the trial court's alleged error concerning the coercion instruction, there is a reasonable probability that the result of the proceeding would have

12

been different. Although Petitioner claims that the girlfriend's testimony supports a coercion defense, the trial record, and the factual findings of the Georgia Court of Appeals, do not support Petitioner's interpretation of this testimony. At trial, the girlfriend stated that she was initially attempting to enter the house but was restrained: "I was trying to take [Petitioner's] hands off my neck. He said, where're you going, bitch, or you're not going – something. I didn't know the exact words." (Doc. no. 9, Ex. 7, 338). However, the girlfriend stated that once she heard the gunfire, "I was trying not to go in the house, and [Petitioner] had me back in my neck pushing me in the house .... I was struggling trying to get loose, and Lorenzo shot me, and I fell to the floor." (Id. at 341).

Upon consideration of arguments presented by Petitioner, the Court concludes that Petitioner has not shown that Mr. Garrett acted unreasonably, or that Petitioner suffered any actual prejudice as a result of Mr. Garrett's actions. More importantly, the Court simply cannot conclude, based upon the record before it, that the state habeas court's application of Strickland was objectively unreasonable. Under the applicable standard of review, the Court must defer to the state court's determination. Accordingly, Petitioner's ineffective assistance of appellate counsel claim arising from trial court's failure to charge the jury on the burden of proof for the affirmative defense of coercion must fail.

### 2. Ineffective Assistance of Trial Counsel

Petitioner also claims that Mr. Garrett rendered ineffective assistance because he failed to raise claims of ineffective assistance of trial counsel based upon trial counsel's (a) failure to request a jury charge on the burden of proof for the affirmative defense of coercion, and (b) failure to request a jury charge of a correct statement of law adjusted to the evidence

13

on the burden of proof for the affirmative defense of coercion.[4] As noted *supra*, Mr. Garrett explained during the state habeas court's evidentiary hearing that he considered raising ineffective assistance of trial counsel as a potential ground, but found no issues that had merit related to ineffective assistance. (Doc. no. 9, Ex. 4, p. 4). Mr. Garrett also stated that the fact that he knew Petitioner's trial counsel did not affect his decision not to raise an ineffective assistance of counsel claim against him. (Id.).

With respect to Petitioner's underlying ineffective assistance of trial counsel claim regarding the jury charges, in Georgia,

> trial judges are required to give a jury charge on the state's burden to disprove an affirmative defense beyond a reasonable doubt when (1) the defendant raises and offers evidence to support it; (2) the defendant requests a specific charge on the state's burden of proof concerning the defense; and (3) the requested charge is a correct statement of the law and is adjusted to the evidence.

Bruce v. Smith 274 Ga. 432, 436, 553 S.E.2d 808, 812 (2001).

For the sake of argument, the Court will presume that trial counsel was deficient in failing to request a specific charge on the state's burden of proof concerning the coercion instruction, and in failing to request a coercion charge which was properly adjusted to the evidence. Nevertheless, as set forth *supra*, Petitioner was not prejudiced by any such failure based upon the lack of evidence relating to coercion and the overwhelming evidence that the

---

[4] Notably, Petitioner's assertion that "Petitioner's trial counsel requested that the trial judge instruct Petitioner's jury on the State's burden of disproving [P]etitioner's affirmative defense of coercion beyond a reasonable doubt" (doc. no. 20, p. 2), offered in support of his first ground for habeas relief, is in direct opposition to his claim that trial counsel was ineffective for failing to make such a request. Similarly, with regard to the instant ground for relief, Petitioner previously asserted that the charge requested by trial counsel was "a correct statement of the law and was adjusted to the evidence." (Id.).

crimes were not a product of coercion. Simply put, Petitioner has not shown that any actual prejudice resulted from Mr. Garrett's actions, and Petitioner is not entitled to relief.

**B.     Introduction of Bad Character Evidence**

Lastly, Petitioner argues that the trial court erred when it permitted the State to introduce bad character evidence of gang activity by Petitioner and Mark Lorenzo Squires.[5] (Doc. no. 1, p. 13). As set forth above, the Georgia Court of Appeals rejected this argument.

A federal habeas court may entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the United States Constitution, a treaty, or the laws of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991). A federal court is not concerned with a state's interpretation of its own laws and rules unless the violations raise federal constitutional problems; such matters are of state concern. McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992); see also Dorsey v. Chapman, 262 F.3d 1181, 1190 n.11 (11th Cir. 2001) ("[F]ederal habeas relief does not include the review of state court application of state procedural rules that do not rise to the level of constitutional violations."). Stated otherwise, a federal habeas court is not a "'super' state supreme court" available to grant relief every time it believes a state court erred. Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam) (quoting Meyer v. Estelle, 621 F.2d 769, 771 (5th Cir. 1980)). Thus, Petitioner's argument regarding the trial court's application of state rules of evidence is not a matter on which this Court can grant relief, and

---

[5]Although Petitioner's initial federal petition raises this ground, it appears that Petitioner abandoned this ground, as his amended brief fails to mention the claim. (See doc. no. 20). Even so, as Petitioner did not explicitly abandon this ground for relief, the Court will consider the claim.

15

Petitioner has not indicated how the trial court's alleged error was contrary to, or involved an unreasonable application, clearly established federal law. As such, Petition is not entitled to federal habeas relief on this ground.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 15th day of May, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE